Donna Boris (California SBN 153033)
Verified Petition to be filed within 45 days
donna@borislaw.com
Boris & Associates
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
(310) 492-5962 ♦ (310) 388-5920 facsimile

Kerry P. Faughnan (Nevada SBN 12204)
kerry.faughnan@gmail.com
Law Offices of Kerry Faughnan
P.O. Box 335361
North Las Vegas, NV 89033
(702) 301-3096 ♦ (702) 331-4222 facsimile

Attorneys for Plaintiff
Slep-Tone Entertainment Corporation

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, <br><br>       Plaintiffs, <br><br> v. <br><br> ELLIS ISLAND CASINO & BREWERY; FAME OPERATING COMPANY, INC.; HOT SHOTS BAR AND GRILL (a/k/a KELLEY'S PUB); THE PUB, LLC; JOE; DAN; BIG NAILS, LLC; BEAUTY BAR; CAFÉ MODA; CAFÉ MODA, LLC; WILLIAM CARNEY; LAS VEGAS DJ SERVICE; JOHNNY VALENTI; E STRING GRILL & POKER BAR; PCA TRAUTH, LLC; KARAOKE LAS VEGAS; JACK GREENBACK; BILL'S GAMBLIN' HALL & SALOON; CORNER INVESTMENT COMPANY, LLC; IMPERIAL PALACE HOTEL & CASINO; HARRAH'S IMPERIAL PALACE CORPORATION; ROLL 'N' MOBILE DJ'S AND KARAOKE TOO; KENNY ANGEL; PT'S PLACE; GOLDEN-PT'S | Case No.: <br><br> **COMPLAINT FOR:** <br><br> **(1) TRADEMARK INFRINGEMENT** <br>      **15 U.S.C. § 1114** <br><br> **(2) LANHAM ACT UNFAIR** <br>      **COMPETITION** <br>      **15 U.S.C. § 1125** <br><br><br> **Jury Trial Demanded** |

PUB CHEYENNE-NELLIS 5, LLC; PT'S
PUB; GOLDEN-PT'S PUB WEST
SAHARA 8, LLC; PT'S GOLD; GOLDEN-
PT'S PUB CENTENNIAL 32, LLC;
GOLDEN-PT'S PUB STEWART-NELLIS
2, LLC; GOLDEN TAVERN GROUP,
LLC; STEVE & RAY KARAOKE; STEVE;
RAY; LEGENDS CASINO; PUGDAWGS,
LLC; STARMAKER KARAOKE; DEBBIE
HARMS; DECATUR RESTAURANT &
TAVERN; DDRT, LLC; PUTTERS;
LISA/CARRISON LTD; DJ TARA KING
PRODUCTIONS; TARA KING; KIXX
BAR; BOULDER STATION CASINO; NP
BOULDER, LLC; NPPALACE, LLC;
PALACE STATION; DANSING
KARAOKE; KIRK; GILLEY'S LAS
VEGAS; TREASURE ISLAND;
TREASURE ISLAND, LLC; HALF SHELL
SEAFOOD AND GAMING; HALF
SHELL, LLC; JAMES BELLAMY;
MEGA-MUSIC PRODUCTIONS; MR. D'S
SPORTS BAR; SPORTS BAR, LLC; RICK
DOMINGUEZ; SOUND SELECT;
ISLAND GRILL; OFFICE 7 LOUNGE &
RESTAURANT, INC.; JAKE'S BAR;
DOC, G. & G., INC.; MIKE CORRAL;
DAVE CORRAL; SHOWTYME
KARAOKE & DJ; CALICO JACK'S
SALOON; MIKE R. GORDON; RED
LABEL LOUNGE; RED LABEL BAR,
INC.; TERRY CICCI; TERRY-OKE
KARAOKE; KJ'S BAR & GRILL; L.T.
BOND, INC.; TIM MILLER; VISION &
SOUND ENTERTAINMENT;
THUNDERBIRD LOUNGE AND BAR;
ARUBA HOTEL AND SPA; IRVINGTON
PROPERTIES, LLC; THUNDERBIRD
BAR & LOUNGE, LLC; AUDIO
THERAPY DJ; MATTE McNULTY (a/k/a
"DJ Matte"); AUDIO THERAPY;GSTI
HOLDINGS, LLC; GOLD SPIKE HOTEL
& CASINO; GOLD SPIKE HOLDINGS,
LLC; MARDI GRAS LOUNGE – BEST
WESTERN; THE NEVADIAN, LLC;
BEST WESTERN MARDI GRAS INN;

J.P.P.J. OF NEVADA, INC.;  HARRAH'S
LAS VEGAS; CAESAR'S
ENTERTAINMENT CORPORATION;
TJ'S ALL-STAR KARAOKE; JOHN
MENNITI; and JOHN DOES NOS. 1-10
INCLUSIVE, IDENTITIES UNKNOWN,

Defendants.

The Plaintiff, SLEP-TONE ENTERTAINMENT CORPORATION ("SLEP-TONE"), by

its undersigned counsel, complains of the Defendants and for its complaint alleges as follows:

### JURISDICTION AND VENUE

1.      This is an action for trademark infringement and unfair competition arising under

§§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125. This Court has

exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that

this is a civil action arising under the laws of the United States.  This Court also has jurisdiction

pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating

to trademarks, and, as to the Plaintiff's Lanham Act unfair competition claim, pursuant to 28

U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the

trademark laws of the United States.

2.      Venue is proper in this District in that all defendants reside in Nevada and at least

one defendant resides in this District. Venue is also proper in this District because a substantial

part of the events or omissions giving rise to the claim occurred in this District.

### THE PLAINTIFF

3.      Plaintiff SLEP-TONE is a North Carolina corporation having its principal place

of business at 14100 South Lakes Drive, Charlotte, North Carolina.

/ / /

/ / /

## THE DEFENDANTS

4.      Defendants ELLIS ISLAND CASINO & BREWERY and FAME OPERATING COMPANY, INC. have their principal business address in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

5.      Defendants THE PUB, LLC and HOT SHOTS BAR AND GRILL (a/k/a KELLEY'S PUB) and Defendants JOE and DAN have their principal business address in Las Vegas, Nevada, and operate eating and drinking establishment(s) at which karaoke entertainment is provided by Defendants JOE and DAN.

6.      Defendants BIG NAILS, LLC and  BEAUTY BAR have their principal business address in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

7.      Defendants CAFÉ MODA, CAFÉ MODA, LLC and WILLIAM CARNEY have their principal business address in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

8.      Defendants LAS VEGAS DJ SERVICE and JOHNNY VALENTI (a/k/a "Johnny V") have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

9.      Defendants E STRING GRILL & POKER BAR and PCA TRAUTH, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

10.      Defendants KARAOKE LAS VEGAS and JACK GREENBACK have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

- 4 -

11.     Defendants BILL'S GAMBLIN' HALL & SALOON and CORNER INVESTMENT COMPANY, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

12.     Defendants IMPERIAL PALACE HOTEL & CASINO and HARRAH'S IMPERIAL PALACE CORPORATION have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

13.     Defendants ROLL 'N' MOBILE DJ'S AND KARAOKE TOO and KENNY ANGEL have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

14.     Defendants PT'S PLACE and GOLDEN-PT'S PUB CHEYENNE-NELLIS 5, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

15.     Defendants PT'S PUB and GOLDEN-PT'S PUB WEST SAHARA 8, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

16.     Defendants PT'S GOLD and GOLDEN-PT'S PUB CENTENNIAL 32, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

17.     Defendants PT'S PLACE and GOLDEN-PT'S PUB STEWART-NELLIS 2, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

/ / /

/ / /

18.   Defendants PT'S PUB and GOLDEN TAVERN GROUP, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

19.   Defendants STEVE & RAY KARAOKE and STEVE and RAY have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

20.   Defendants LEGENDS CASINO and PUGDAWGS, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

21.   Defendants STARMAKER KARAOKE and DEBBIE HARMS have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

22.   Defendants DECATUR RESTAURANT & TAVERN and DDRT, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

23.   Defendants PUTTERS and LISA/CARRISON LTD have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

24.   Defendants DJ TARA KING PRODUCTIONS and TARA KING have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

25.   Defendants KIXX BAR, BOULDER STATION CASINO and NP BOULDER, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

/ / /

26.   Defendants JACK'S IRISH PUB, NP PALACE, LLC and PALACE STATION have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

27.   Defendants DANSING KARAOKE and KIRK (a/k/a "The Urban Cowboy – DJ" and "DJ Captain Kirk") have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

28.   Defendants GILLEY'S LAS VEGAS, TREASURE ISLAND and TREASURE ISLAND, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

29.   Defendants HALF SHELL SEAFOOD AND GAMING and HALF SHELL, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

30.   Defendants JAMES BELLAMY and MEGA-MUSIC PRODUCTIONS have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State.

31.   Defendants MR. D'S SPORTS BAR and SPORTS BAR, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

32.   Defendants RICK DOMINGUEZ (a/k/a "Rick D") and SOUND SELECT are engaged in the business of providing karaoke entertainment at multiple venues in this State.

33.   Defendants  ISLAND GRILL and OFFICE 7 LOUNGE & RESTAURANT, INC. have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

/ / /

34.     Defendants  JAKE'S BAR and DOC, G. & G., INC. have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

35.     Defendants MIKE CORRAL,  DAVE CORRAL (a/k/a "Crazy Dave" and "Mad Mike"),  and SHOWTYME KARAOKE & DJ have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at venue(s) in this State.

36.     Defendants  CALICO JACK'S SALOON and MIKE R. GORDON have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

37.     Defendants  RED LABEL LOUNGE and RED LABEL BAR, INC. have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

38.     Defendants TERRY CICCI and TERRY-OKE KARAOKE have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State.

39.     Defendants  KJ'S BAR & GRILL AND L.T. BOND, INC. have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

40.     Defendants TIM MILLER (a/k/a "Diamond Tim") and VISION & SOUND ENTERTAINMENT have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at venue(s) in this State.

41.     Defendants  THUNDERBIRD LOUNGE AND BAR; ARUBA HOTEL AND SPA; IRVINGTON PROPERTIES, LLC and THUNDERBIRD BAR & LOUNGE, LLC have

their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

42.     Defendants AUDIO THERAPY and MATTE McNULTY (a/k/a "DJ Matte") have their principal business address in Las Vegas, Nevada and are engaged in the business of providing karaoke entertainment at multiple venues in this State using multiple karaoke systems.

43.     Defendants  GOLD SPIKE HOTEL AND CASINO, GOLD SPIKE HOLDINGS, LLC and GSTI HOLDINGS, LLC have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

44.     Defendants  MARDI GRAS LOUNGE – BEST WESTERN and THE NEVADIAN, INC. have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

45.     Defendants  BEST WESTERN MARDI GRAS INN and J.P.P.J. OF NEVADA, INC. have their principal place of business in Las Vegas, Nevada and operate eating and drinking establishment(s) at which karaoke entertainment is provided.

46.     The true names and capacities, whether individual, corporate, associate, partner or otherwise of Defendants named herein as Does 1 through 10 inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues these Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## **BACKGROUND FACTS**

47.     Slep-Tone is the manufacturer and distributor of karaoke accompaniment tracks sold under the name "Sound Choice." Slep-Tone was founded 25 years ago by Kurt and Derek Slep, two brothers with a vision to nurture the development of karaoke in America as a participatory entertainment phenomenon.

/ / /

/ / /

48.     Sound Choice is recognized as one of the leading producers of high quality karaoke accompaniment tracks. The company has invested over $18 million to re-record and replicate the authentic sound of popular music across different eras and genres of music.

49.     Slep-Tone's dedication to producing music of the highest quality and the most authentic character led to its music becoming the staple of almost every karaoke show in the country. As karaoke grew in popularity, Sound Choice became the brand that nearly every karaoke fan wanted to sing and that nearly every karaoke jockey ("KJ") wanted in his or her library.

50.     KJs play karaoke songs using compact disks containing files written in one of two special encoded formats, either "CD+G" ("compact disk plus graphics") or "MP3G" ("MP3[1] plus graphics"), in which the disk contains the music and the lyrics, which will display on a screen.

51.     In recent years, computer technology, cheap file memory devices, and the internet have made it possible for karaoke disks to be decoded and "ripped" (copied) to a user's hard drive and easily copied and distributed between KJs. This technology has proven irresistible to KJs, many of who have used this opportunity to copy one purchased disk to several different computer based systems, copy a singer's personal disks if they use them during a show, "swap" song files among each other, download them from illegal file sharing sites and build libraries of tens of thousands of karaoke songs without paying for them.

52.     Whereas in the past a KJ would buy multiple copies of an original disk if he or she desired to operate multiple systems, now they simply "clone" their songs for multiple commercial systems or even their entire karaoke song libraries to start a new operation.

---

[1]   MP3 is an acronym standing for "Moving Picture Experts Group Audio Layer 3." MP3G is a far newer format than CD+G and is significantly more portable than CD+G. The Plaintiff has only recently begun distributing its karaoke tracks in this format, and only under tight contractual controls that require user registration and audits, confine possession to professional karaoke operators, include serialization of licensed disks, and prohibit file sharing under pain of forfeiture of license rights.

Additionally, many KJs or operators starting in the business simply buy computer drives pre-loaded with thousands of illegally copied songs.

53.     These practices have become so widespread that Slep-Tone has been driven nearly out of business. At its peak, the Sound Choice family of companies employed 75 individuals and produced as many as 5 new karaoke disks per month. Today, the enterprise employs fewer than 10 individuals.

54.     Sound Choice Studios, Inc. which was SLEP-TONE's sister company, was responsible for recording new music for Karaoke.  Sound Choice Studios, Inc. lost money on every recent new karaoke disk and was driven out of business because it could no longer profitably produce new music as illegally copying of its products has skyrocketed. The most recent new disk did not produce enough revenue even to cover the production and licensing costs associated with it—yet the songs from that disk can be found on as many as 30,000 karaoke systems around the United States.  In the future, SLEP-TONE will have to subcontract to ex-employees of Sound Choice Studios, Inc. who purchased its assets, if/when it is able to profitably release new titles again.

55.     For KJs, karaoke is a commercial enterprise.

56.     Karaoke entertainment is provided as part of, and/or in conjunction with, the commercial enterprise of those persons and entities named herein who own and/or operate eating and drinking establishment(s).

57.     KJs who legitimately acquired all of their music at great cost are being forced by illicit competition to produce shows for lower and lower fees. Illegitimate competitors offer libraries of tens of thousands of songs, which would have cost $50,000 to $100,000 or more to acquire legitimately, but produce shows for one-third the rates a legitimate KJ can offer. The result is significant financial pressure on once-legitimate KJs to skirt or ignore the law and become pirates, simply to stay in business.

58.     Slep-Tone has been forced to undertake this litigation in order to ensure that it survives and continues to produce the high-quality karaoke music its fans demand and to level the playing field for the legitimate KJs.

59.     The term "karaoke" means "empty orchestra" in Japanese. Karaoke entertainment has grown into a multi-million dollar business in the United States.

60.     Karaoke compact disk plus graphics or MP3 plus graphics recordings contain re-created arrangements of popular songs for use as "accompaniment tracks."  Typically, the lead vocal tracks in an accompaniment track are omitted so that a karaoke participant can sing along, as though he or she were the lead singer. In other situations, the lead vocal track by a sound-alike artist might be included, and some formats allow the lead vocal to be selectively muted upon playback so that the accompaniment track may be listened to either with or without the lead vocals.

61.     The "graphics" portion of a karaoke recording refers to the encoding of the recording with data to provide a contemporaneous video display of the lyrics to the song, in order to aid the performer.

62.     This graphics data is also utilized to mark the accompaniment tracks with the Sound Choice trademarks and to cause the Sound Choice trademarks to be displayed upon playback.

63.     Entertainers who provide karaoke services in bars, restaurants, and other venues are known as karaoke jockeys ("KJs"), karaoke hosts, or karaoke operators. The services provided by KJs typically include providing the karaoke music and equipment for playback, entertaining the assembled crowd for warm-up purposes, and organizing the karaoke show by controlling access to the stage, setting the order of performance, and operating the karaoke equipment.

///

64. Typically, a KJ will maintain a catalog of songs available for performance in order to aid participants in selecting a song to sing.

65. Legitimate KJs purchase equipment and purchase or license compact disks containing accompaniment tracks and charge for the above-mentioned karaoke services.

66. Many KJs, such as some of the present Defendants, obtain, copy, share, distribute and/or sell media-shifted copies of the accompaniment tracks via pre-loaded hard drives, USB drives, CD-R's, or the Internet.

67. Some KJs copy the accompaniment tracks from compact discs to computer hard drives or other media, an activity known as "media-shifting."

68. In many cases, media-shifting also involves converting the compact disc files to a different format, such as from CD+G format to MP3G format or WAV+G format; this is referred to as "format-shifting."

69. Both media-shifting and format-shifting involve the creation of copies of the original materials stored on the compact discs.

70. Upon information and belief, and based upon investigation of their activities, the present Defendants are in possession of, and/or have used, authorized, or benefitted from the use and display of unauthorized media-shifted and format-shifted copies of karaoke accompaniment tracks which have been marked falsely with SLEP-TONE's federally registered trademarks.

71. Neither SLEP-TONE nor any of its associated companies has ever authorized media-shifting or format-shifting of its accompaniment tracks for any commercial purpose. SLEP-TONE does, however, tolerate media-shifting and format-shifting under very specific conditions.

72. SLEP-TONE's conditions for tolerance of media-shifting and format-shifting include, without limitation, that (a) that each media-shifted or format-shifted track must have originated from an original, authentic Sound Choice compact disc; (b) that the tracks from the

original, authentic Sound Choice compact disc be shifted to one, and only one, alternative medium at a time; (c) that the KJ maintain ownership and possession of the original, authentic Sound Choice compact disc for the entire time that the media-shifted or format-shifted tracks are in existence; (d) that the original, authentic Sound Choice compact disc not be used for any commercial purpose while its content has been shifted to the alternative medium; and (e) that the KJ notify SLEP-TONE that he or she intends to conduct or has conducted a media-shift or format-shift, and submits to a verification by a SLEP-TONE representative of adherence to SLEP-TONE's policy.

73.    Media-shifting or format-shifting that occurs outside the conditions of tolerance described above is entirely without authorization or tolerance.

74.    Each of the Defendants has used media-shifted and/or format-shifted karaoke accompaniment tracks marked with the SLEP-TONE's registered trademarks for commercial purposes.

75.    Without exception, the Defendants' media-shifting activities have been undertaken outside the conditions of tolerance described above.

76.    A karaoke accompaniment track that exists outside the conditions of tolerance described above and that has been marked with SLEP-TONE's federally registered trademarks is a counterfeit.

77.    The copying, sharing, distribution, and selling of media-shifted and/or format-shifted copies is not accompanied by the payment of any royalty to SLEP-TONE, nor authorized by any license agreement.

78.    SLEP-TONE and its affiliated companies pay statutory and negotiated royalties to the owners of copyright in the underlying musical works for their activities in legitimately creating, copying, distributing, and selling compact disks containing karaoke accompaniment tracks.

79.     Those persons, including the Defendants, who illegitimately obtain, copy, share, distribute, and/or sell media-shifted copies of the Plaintiff's accompaniment tracks do not pay royalties to the owners of copyright in the underlying musical works.

80.     SLEP-TONE and its affiliated companies have spent millions of dollars building and maintaining studios, hiring artists, building a distribution facility, paying royalties to copyright owners, building a company that is capable of reliably producing high-quality karaoke versions of current and historical musical hits, and building a brand that is one of the pre-eminent brands in the industry.

81.     The widespread creation of counterfeit copies of SLEP-TONE's karaoke disks has denied SLEP-TONE the benefit of its investments.

82.     These counterfeits include SLEP-TONE's registered trademarks, such that to the consumers of the illegitimate KJs' services, the counterfeits are virtually indistinguishable from genuine Sound Choice materials.

83.     For each of the several recent releases of new karaoke music by SLEP-TONE, dozens of illegitimate copies of the contents of the disk have been created, on average, for each legitimate copy sold. SLEP-TONE, its affiliated companies, and its licensors have lost a considerable amount of money due to this widespread piracy.

84.     Such widespread illegal copying of music has been made possible by improving and ever cheaper computer technology and memory devices and the easy distribution of digital content over the internet.

85.     Widespread pirating of songs has contributed to the loss of more than sixty jobs at the Plaintiff's location in Charlotte, North Carolina, as well as several consecutive years of operating losses, as revenues do not cover fixed costs.

///

///

86.     Legitimate KJs spend thousands of dollars acquiring SLEP-TONE's accompaniment tracks, an irreducible overhead cost that must be recovered over a significant number of engagements.

87.     Illegitimate KJs, who acquire the songs in their libraries illegally, have an unfair advantage over legitimate KJs, because the illegitimate KJs are able to provide karaoke services with a considerably lower overhead cost and significantly more songs through the pirating of SLEP-TONE's tracks.

88.     Piracy therefore unfairly increases the profits of illegitimate KJs and unfairly decreases the profits of legitimate KJs, a condition that pressures legitimate KJs to either commit piracy instead of doing business with SLEP-TONE and other karaoke music producers or lose their shows to KJs offering more songs at cheaper prices to the same venues.

89.     Because of piracy, it is nearly impossible for legitimate KJs to compete against illegal KJs, who are able to provide less expensive karaoke services and a greater number of tracks due to their lower overhead costs.

90.     Even when illegitimate KJs have been forced through legal action or agreement to destroy their counterfeit copies of the Plaintiff's tracks, the illegitimate KJs continue to engage in unfair competition using pirated materials belonging to other manufacturers.

91.     This unfair competition harms the Plaintiff, despite the elimination of counterfeit copies of the Plaintiff's tracks, because the continuing piracy of other manufacturers' tracks exerts continuing pressure upon the Plaintiff's customers and potential customers to commit piracy of Plaintiff's tracks.  Further the greater number of tracks on pirate systems makes it more difficult for legal hosts to get hired and thus have the revenue to purchase Plaintiff's products.

92.     In order to build a large library of SLEP-TONE's accompaniment tracks, a legitimate KJ could expect to spend approximately $25,000 for each karaoke system upon which

that library would be used. For a comprehensive library of SLEP-TONE's accompaniment tracks, that figure would rise to $40,000 or more.

93.     Venues such as those operated by the Defendants can enjoy significant savings by turning a blind eye to the actions of the illegitimate KJs they hire.

94.     These venues benefit from piracy because unfair competition from pirate KJs pressures legitimate KJs to accept lower compensation from the venues to obtain new business or retain old business. By decreasing the fixed cost of entertainment, the Defendants' operations become more profitable.

## THE RIGHTS OF THE PLAINTIFF

95.     Plaintiff SLEP-TONE is the owner of U.S. Trademark Registration No. 1,923,448 for the trademark SOUND CHOICE.

96.     Plaintiff SLEP-TONE is also the owner of U.S. Trademark Registration No. 2,000,725, for a display trademark as follows:



97.     Plaintiff Slep-Tone has, for the entire time its marks ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendants, with notice of its federal registrations through the consistent display of the symbol ® with its marks as used.

## ACTIVITIES OF DEFENDANTS

98.     SLEP-TONE's investigators observed each of the Defendants possessing, using, or authorizing or benefiting from unauthorized counterfeit copies of at least one work bearing the Sound Choice Marks.

99.    Defendants ELLIS ISLAND CASINO & BREWERY and FAME OPERATING COMPANY, INC.   operate a karaoke system to produce a karaoke show at their eating and drinking  establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used. In connection with that show, Defendant ELLIS ISLAND CASINO & BREWERY and FAME OPERATING COMPANY, INC.  repeatedly displayed the Sound Choice Marks without right or license.

100.    Defendant ELLIS ISLAND CASINO & BREWERY and FAME OPERATING COMPANY, INC. has advertised or otherwise indicated that it is in possession of a library containing more than 100,000 tracks stored on its karaoke system.

101.    Defendants HOT SHOTS BAR AND GRILL (a/k/a KELLEY'S PUB), THE PUB, LLC and Defendants JOE and DAN operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used. In connection with that show, Defendants HOT SHOTS BAR AND GRILL (a/k/a KELLEY'S PUB), THE PUB, LLC and Defendants JOE and DAN repeatedly displayed the Sound Choice Marks without right or license.

102.    Defendants HOT SHOTS BAR AND GRILL (a/k/a KELLEY'S PUB), THE PUB, LLC and Defendants JOE and DAN have advertised or otherwise indicated that they are in possession of a library containing more than 100,000 tracks stored on their karaoke system.

103.    Defendants BIG NAILS, LLC and BEAUTY BAR operate a karaoke system to produce a karaoke show at its eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

104.    Upon information and belief, the karaoke system described in the preceding paragraph is directly owned by Defendants BIG NAILS, LLC and  BEAUTY BAR.

105.    In connection with that show, Defendants BIG NAILS, LLC and  BEAUTY BAR repeatedly displayed the Sound Choice Marks without right or license.

106.   Defendants BIG NAILS, LLC and BEAUTY BAR have advertised or otherwise indicated that they are in possession of a library containing more than 50,000 tracks stored on their karaoke system.

107.   Defendants CAFÉ MODA, CAFÉ MODA, LLC and WILLIAM CARNEY operate a karaoke system to produce a karaoke show at their establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

108.   Upon information and belief, the karaoke system described in the preceding paragraph is directly owned by Defendants CAFÉ MODA, CAFÉ MODA, LLC and WILLIAM CARNEY.

109.   In connection with that show, Defendants CAFÉ MODA, CAFÉ MODA, LLC and WILLIAM CARNEY repeatedly displayed the Sound Choice Marks without right or license.

110.   Defendants LAS VEGAS DJ SERVICE and JOHNNY VALENTI (a/k/a "Johnny V"), operate karaoke systems to produce karaoke shows at multiple eating and drinking establishments in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

111.   In connection with those shows, Defendants LAS VEGAS DJ SERVICE and JOHNNY VALENTI repeatedly displayed the Sound Choice Marks without right or license.

112.   Defendants LAS VEGAS DJ SERVICE and JOHNNY VALENTI regularly perform karaoke shows in multiple eating and drinking establishments simultaneously.

113.   Defendants LAS VEGAS DJ SERVICE and JOHNNY VALENTI have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

114.   Defendant E STRING GRILL & POKER BAR and PCA TRAUTH, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

115.   In connection with those shows, Defendants E STRING GRILL & POKER BAR and PCA TRAUTH, LLC repeatedly displayed the Sound Choice Marks without right or license.

116.   Defendants E STRING GRILL & POKER BAR and PCA TRAUTH, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

117.   Defendants KARAOKE LAS VEGAS and JACK GREENBACK   operate a karaoke system to produce a karaoke show at multiple eating and drinking establishments in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

118.   In connection with those shows, Defendants KARAOKE LAS VEGAS and JACK GREENBACK repeatedly displayed the Sound Choice Marks without right or license.

119.   Upon information and belief, Defendants KARAOKE LAS VEGAS and JACK GREENBACK perform regular karaoke shows in multiple eating and drinking establishments in this State using multiple karaoke systems. Defendants KARAOKE LAS VEGAS and JACK GREENBACK regularly perform karaoke shows in separate eating and drinking establishments simultaneously.

120.   Defendants BILL'S GAMBLIN' HALL & SALOON and CORNER INVESTMENT COMPANY, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

121.   In connection with those shows, Defendants BILL'S GAMBLIN' HALL & SALOON and CORNER INVESTMENT COMPANY, LLC repeatedly displayed the Sound Choice Marks without right or license.

///

///

122.   Defendants BILL'S GAMBLIN' HALL & SALOON and CORNER INVESTMENT COMPANY, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

123.   Defendants IMPERIAL PALACE HOTEL & CASINO and HARRAH'S IMPERIAL PALACE CORPORATION operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

124.   In connection with those shows, Defendants IMPERIAL PALACE HOTEL & CASINO and HARRAH'S IMPERIAL PALACE CORPORATION repeatedly displayed the Sound Choice Marks without right or license.

125.   Defendants IMPERIAL PALACE HOTEL & CASINO and HARRAH'S IMPERIAL PALACE CORPORATION have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

126.   Defendants ROLL 'N' MOBILE DJ'S AND KARAOKE TOO and KENNY ANGEL were observed operating, through an employee or contractor known as "Sean McDonald", a karaoke system to produce karaoke shows at multiple eating and drinking establishments in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

127.   In connection with those shows, Defendants ROLL 'N' MOBILE DJ'S AND KARAOKE TOO and KENNY ANGEL repeatedly displayed the Sound Choice Marks without right or license.

128.   Defendants ROLL 'N' MOBILE DJ'S AND KARAOKE TOO and KENNY ANGEL regularly perform karaoke shows in separate eating and drinking establishments simultaneously.

///

129.   Upon information and belief, Defendants ROLL 'N' MOBILE DJ'S AND KARAOKE TOO and KENNY ANGEL are in possession of a library containing more than 36,000 karaoke accompaniment tracks stored on their karaoke system.

130.   Defendants PT'S PLACE and GOLDEN-PT'S PUB CHEYENNE-NELLIS 5, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

131.   In connection with those shows, Defendants PT'S PLACE and GOLDEN-PT'S PUB CHEYENNE-NELLIS 5, LLC repeatedly displayed the Sound Choice Marks without right or license.

132.   Defendants PT'S PUB and GOLDEN-PT'S PUB WEST SAHARA 8, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

133.   In connection with those shows, Defendants PT'S PUB and  GOLDEN-PT'S PUB WEST SAHARA 8, LLC repeatedly displayed the Sound Choice Marks without right or license.

134.   Defendants PT'S GOLD and GOLDEN-PT'S PUB CENTENNIAL 32, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

135.   In connection with those shows, Defendants PT'S GOLD and GOLDEN-PT'S PUB CENTENNIAL 32, LLC repeatedly displayed the Sound Choice Marks without right or license.

136.   Defendants PT'S PLACE and GOLDEN-PT'S PUB STEWART-NELLIS 2, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

137.   In connection with those shows, Defendants PT'S PLACE and GOLDEN-PT'S PUB STEWART-NELLIS 2, LLC repeatedly displayed the Sound Choice Marks without right or license.

138.   Defendants PT'S PUB and GOLDEN TAVERN GROUP, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

139.   In connection with those shows, Defendants PT'S PUB and GOLDEN TAVERN GROUP repeatedly displayed the Sound Choice Marks without right or license.

140.   Defendants STEVE & RAY KARAOKE and STEVE and RAY were observed operating a karaoke system to produce karaoke shows at multiple venues in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

141.   In connection with those shows, Defendants STEVE & RAY KARAOKE and STEVE and RAY repeatedly displayed the Sound Choice Marks without right or license.

142.   Upon information and belief, Defendants STEVE & RAY KARAOKE and STEVE and RAY perform regular karaoke shows at multiple eating and drinking establishments in this State.

143.   Defendants STEVE & RAY KARAOKE and STEVE and RAY have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke system.

144.   Defendants LEGENDS CASINO and PUGDAWGS, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

145.   In connection with those shows, Defendants LEGENDS CASINO and PUGDAWGS, LLC repeatedly displayed the Sound Choice Marks without right or license.

///

146.   Defendants LEGENDS CASINO and PUGDAWGS, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

147.   Defendants STARMAKER KARAOKE and DEBBIE HARMS were observed operating a karaoke system to produce multiple karaoke shows at multiple venues in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

148.   In connection with those shows, Defendants STARMAKER KARAOKE and DEBBIE HARMS repeatedly displayed the Sound Choice Marks without right or license.

149.   Upon information and belief, Defendants STARMAKER KARAOKE and DEBBIE HARMS perform regular karaoke shows in multiple venues in this State using multiple karaoke systems.

150.   Defendants STARMAKER KARAOKE and DEBBIE HARMS regularly perform karaoke shows in separate venues simultaneously.

151.   Defendants STARMAKER KARAOKE and DEBBIR HARMS have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

152.   Defendants DECATUR RESTAURANT & TAVERN and DDRT, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

153.   In connection with those shows, Defendants DECATUR RESTAURANT & TAVERN and DDRT, LLC repeatedly displayed the Sound Choice Marks without right or license.

154.   Defendants DECATUR RESTAURANT & TAVERN and DDRT, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

155.   Defendants PUTTERS and LISA/CARRISON LTD, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

156.   In connection with those shows, Defendants PUTTERS and LISA/CARRISON LTD repeatedly displayed the Sound Choice Marks without right or license.

157.   Defendants PUTTERS and LISA/CARRISON LTD have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

158.   Defendants DJ TARA KING PRODUCTIONS and TARA KING were observed operating a karaoke system to produce multiple karaoke shows at multiple venues in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

159.   In connection with those shows, Defendants DJ TARA KING PRODUCTIONS and TARA KING repeatedly displayed the Sound Choice Marks without right or license.

160.   Upon information and belief, Defendants DJ TARA KING PRODUCTIONS and TARA KING perform regular karaoke shows at multiple venues in this State using multiple karaoke systems.

161.   Defendants DJ TARA KING PRODUCTIONS and TARA KING regularly perform karaoke shows at multiple separate eating and drinking establishments simultaneously.

162.   Defendants DJ TARA KING PRODUCTIONS and TARA KING have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

163.   Defendants KIXX BAR, BOULDER STATION CASINO, and NP BOULDER, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

164.   In connection with those shows, Defendants KIXX BAR, BOULDER STATION CASINO, and NP BOULDER, LLC repeatedly displayed the Sound Choice Marks without right or license.

165.   Defendants KIXX BAR, BOULDER STATION CASINO, and NP BOULDER, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

166.   Defendants NPPALACE, LLC and PALACE STATION operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

167.   In connection with those shows, Defendants NPPALACE, LLC and PALACE STATION repeatedly displayed the Sound Choice Marks without right or license.

168.   Defendants NPPALACE, LLC and PALACE STATION have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

169.   Defendants DANSING KARAOKE and KIRK (a/k/a "The Urban Cowboy – DJ" and "DJ Captain Kirk") were observed operating a karaoke system to produce multiple karaoke show at multiple eating and drinking establishments in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

170.   In connection with those shows, Defendants DANSING KARAOKE and KIRK repeatedly displayed the Sound Choice Marks without right or license.

171.   Upon information and belief, Defendants DANSING KARAOKE and KIRK perform regular karaoke shows at multiple venues in this State using multiple karaoke systems.

172.   Defendants DANSING KARAOKE and KIRK regularly perform karaoke shows at multiple separate eating and drinking establishments simultaneously.

/ / /

173.   Defendants DANSING KARAOKE and KIRK have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

174.   Defendants GILLEY'S LAS VEGAS, TREASURE ISLAND, and TREASURE ISLAND, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

175.   In connection with those shows, Defendants GILLEY'S LAS VEGAS, TREASURE ISLAND, and TREASURE ISLAND, LLC repeatedly displayed the Sound Choice Marks without right or license.

176.   Defendants GILLEY'S LAS VEGAS, TREASURE ISLAND, and TREASURE ISLAND, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

177.   Defendants HALF SHELL SEAFOOD AND GAMING and HALF SHELL, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

178.   In connection with those shows, Defendants HALF SHELL SEAFOOD AND GAMING and HALF SHELL, LLC repeatedly displayed the Sound Choice Marks without right or license.

179.   Defendants HALF SHELL SEAFOOD AND GAMING and HALF SHELL, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

180.   Defendants MEGA-MUSIC PRODUCTIONS and JAMES BELLAMY were observed operating a karaoke system to produce multiple karaoke shows at multiple eating and

drinking establishments in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

181.   In connection with those shows, Defendants MEGA-MUSIC PRODUCTIONS and JAMES BELLAMY repeatedly displayed the Sound Choice Marks without right or license.

182.   Defendants MEGA-MUSIC PRODUCTIONS and JAMES BELLAMY have advertised or otherwise indicated that they are in possession of a library containing more than 135,000 tracks stored on their karaoke system.

183.   Upon information and belief, Defendants MEGA-MUSIC PRODUCTIONS and JAMES BELLAMY perform regular karaoke shows at multiple venues in this State.

184.   Defendants MR. D'S SPORTS BAR and SPORTS BAR, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

185.   In connection with those shows, Defendants MR. D'S SPORTS BAR and SPORTS BAR, LLC repeatedly displayed the Sound Choice Marks without right or license.

186.   Defendants MR. D'S SPORTS BAR and SPORTS BAR, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 135,000 tracks stored on their karaoke systems.

187.   Defendants SOUND SELECT and RICK DOMINGUEZ (a/k/a "Rick D"), were observed operating a karaoke system to produce multiple karaoke shows at multiple eating and drinking establishments in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

188.   In connection with those shows, Defendants SOUND SELECT and RICK DOMINGUEZ repeatedly displayed the Sound Choice Marks without right or license.

/ / /

/ / /

189.   Defendants SOUND SELECT and RICK DOMINGUEZ have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

190.   Upon information and belief, Defendants SOUND SELECT and RICK DOMINGUEZ perform regular karaoke shows at multiple eating and drinking establishments in this State.

191.   Defendants ISLAND GRILL and OFFICE 7 LOUNGE & RESTAURANT, INC. operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

192.   In connection with those shows, Defendants ISLAND GRILL and OFFICE 7 LOUNGE & RESTAURANT, INC. repeatedly displayed the Sound Choice Marks without right or license.

193.   Defendants ISLAND GRILL and OFFICE 7 LOUNGE & RESTAURANT, INC. have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

194.   Defendants JAKE'S BAR and DOC, G. & G., INC. operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

195.   In connection with those shows, Defendants JAKE'S BAR and DOC, G. & G., INC. repeatedly displayed the Sound Choice Marks without right or license.

196.   Defendants JAKE'S BAR and DOC, G. & G., INC. have advertised or otherwise indicated that they are in possession of a library containing more than 200,000 tracks stored on their karaoke systems.

197.   Defendants SHOWTYME KARAOKE & DJ, MIKE CORRAL and DAVE CORRAL (a/k/a "Crazy Dave" and "Mad Mike") were observed operating a karaoke system to

produce a karaoke show at a venue in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

198.   In connection with that show, Defendants SHOWTYME KARAOKE & DJ, MIKE CORRAL and DAVE CORRAL repeatedly displayed the Sound Choice Marks without right or license.

199.   Defendants CALICO JACK'S SALOON and MIKE R. GORDON operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

200.   In connection with those shows, Defendants CALICO JACK'S SALOON and MIKE R. GORDON repeatedly displayed the Sound Choice Marks without right or license.

201.   Defendants RED LABEL LOUNGE and RED LABEL BAR, INC. operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

202.   In connection with those shows, Defendants RED LABEL LOUNGE and RED LABEL BAR, INC. repeatedly displayed the Sound Choice Marks without right or license.

203.   Defendants TERRY-OKE KARAOKE and TERRY CICCI were observed operating a karaoke system to produce multiple karaoke shows at multiple eating and drinking establishments in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

204.   In connection with those shows, Defendants TERRY-OKE KARAOKE and TERRY CICCI repeatedly displayed the Sound Choice Marks without right or license.

205.   Defendants KJ'S BAR & GRILL and L.T. BOND, INC. operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

///

206.   In connection with those shows, Defendants BAR & GRILL and L.T. BOND, INC.  repeatedly displayed the Sound Choice Marks without right or license.

207.   Defendants VISION & SOUND ENTERTAINMENT and TIM MILLER (a/k/a "Diamond Tim") were observed operating a karaoke system to produce a karaoke show at an eating and drinking establishment in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

208.   In   connection   with   that   show,   Defendants   VISION   &   SOUND ENTERTAINMENT and TIM MILLER repeatedly displayed the Sound Choice Marks without right or license.

209.   Defendants VISION & SOUND ENTERTAINMENT and TIM MILLER have advertised or otherwise indicated that they are in possession of a library containing more than 365,000 tracks stored on their karaoke system.

210.   Defendants THUNDERBIRD LOUNGE AND BAR, ARUBA HOTEL & SPA, THUNDERBIRD BAR & LOUNGE, LLC and IRVINGTON PROPERTIES, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment(s) in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

211.   In connection with those shows, Defendants THUNDERBIRD LOUNGE AND BAR, ARUBA HOTEL & SPA, THUNDERBIRD BAR & LOUNGE, LLC, and IRVINGTON PROPERTIES, LLC repeatedly displayed the Sound Choice Marks without right or license.

212.   Defendants THUNDERBIRD LOUNGE AND BAR, ARUBA HOTEL & SPA, IRVINGTON PROPERTIES, LLC and THUNDERBIRD BAR & LOUNGE, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 365,000 tracks stored on their karaoke systems.

213.   Defendants AUDIO THERAPY DJ, AUDIO THERAPY and MATTE McNULTY were observed operating, through employees or contractors known as "DJ Matte &

Jaz", a karaoke system to produce a karaoke show at an eating and drinking establishment in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

214.   In connection with those shows, Defendants AUDIO THERAPY DJ, AUDIO THERAPY and MATTE McNULTY repeatedly displayed the Sound Choice Marks without right or license.

215.   Upon information and belief, Defendants AUDIO THERAPY DJ, AUDIO THERAPY and MATTE McNULTY perform regular karaoke shows at multiple eating and drinking establishments in this State using multiple karaoke systems.

216.   Defendants AUDIO THERAPY DJ, AUDIO THERAPY and MATTE McNULTY have advertised or otherwise indicated that they are in possession of a library containing more than 100,000 tracks stored on their karaoke systems.

217.   Defendants GOLD SPIKE HOTEL AND CASINO, GOLD SPIKE HOLDINGS, LLC and GSTI HOLDINGS, LLC operate a karaoke system to produce a karaoke show at their eating and drinking establishment(s) in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

218.   In connection with those shows, Defendants GOLD SPIKE HOTEL AND CASINO, GOLD SPIKE HOLDINGS, LLC and GSTI HOLDINGS, LLC repeatedly displayed the Sound Choice Marks without right or license.

219.   Defendants GOLD SPIKE HOTEL AND CASINO, GOLD SPIKE HOLDINGS, LLC and GSTI HOLDINGS, LLC have advertised or otherwise indicated that they are in possession of a library containing more than 100,000 tracks stored on their karaoke systems.

220.   Defendants MARDI GRAS LOUNGE-BEST WESTERN and THE NEVADIAN, INC. operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

221.   In connection with those shows, Defendants MARDI GRAS LOUNGE-BEST WESTERN and THE NEVADIAN, INC. repeatedly displayed the Sound Choice Marks without right or license.

222.   Defendants MARDI GRAS LOUNGE-BEST WESTERN and THE NEVADIAN, INC. have advertised or otherwise indicated that they are in possession of a library containing more than 100,000 tracks stored on their karaoke systems.

223.   Defendants BEST WESTERN MARDI GRAS INN and J.P.P.J. OF NEVADA, INC. operate a karaoke system to produce a karaoke show at their eating and drinking establishment in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

224.   In connection with those shows, Defendants BEST WESTERN MARDI GRAS INN and J.P.P.J. OF NEVADA, INC. repeatedly displayed the Sound Choice Marks without right or license.

225.   Defendants BEST WESTERN MARDI GRAS INN and J.P.P.J. OF NEVADA, INC. have advertised or otherwise indicated that they are in possession of a library containing more than 100,000 tracks stored on their karaoke systems.

226.   Defendants TJ'S ALL-STAR KARAOKE and JOHN MENNITI were observed operating a karaoke system to produce a karaoke show at a venue in this State in which counterfeit copies of SLEP-TONE's accompaniment tracks were being used.

227.   In connection with that show, Defendants TJ'S ALL-STAR KARAOKE and JOHN MENNITI repeatedly displayed the Sound Choice Marks without right or license.

228.   Defendants HARRAH'S LAS VEGAS and CAESAR'S ENTERTAINMENT CORPORATION operate a karaoke system to produce a karaoke show at their eating and drinking establishment(s) in which counterfeit copies of SLEP-TONE's accompaniment tracks were observed being used.

229.   In connection with those shows, Defendants HARRAH'S LAS VEGAS and CAESAR'S ENTERTAINMENT CORPORATION repeatedly displayed the Sound Choice Marks without right or license.

230.   Each of the Defendants has possessed, used, or authorized or benefited from the use and display of unauthorized counterfeit goods bearing the Sound Choice Marks, or has provided, advertised, or authorized or benefited from the provision of services in connection with the Sound Choice Marks.

231.   Upon information and belief, each of those karaoke systems has a library containing a minimum of 8,500 tracks stored thereon, to facilitate their use simultaneously at separate venues or events.

232.   Based upon the popularity of SLEP-TONE's music and the size of the Defendants' respective libraries, which vary between 8,500 and 365,000 songs, operating in many cases with multiple karaoke systems, the Plaintiff has a good-faith belief that discovery will show that each of the Defendants (a) is in possession of unauthorized counterfeit goods bearing the Sound Choice Marks, or (b) knowingly benefits from and/or has the capacity to control the infringing conduct of others.

233.   Each of the Defendants is accused of committing acts of infringement, unfair competition, and deceptive and unfair trade practices in substantially the same way, namely, through the use of counterfeit karaoke tracks to perform karaoke-related services.

234.   Though created through unauthorized duplication, the counterfeit karaoke tracks obtained or made by the Defendants all originated, directly or indirectly in an unbroken sequence, from the same ultimate source, namely, from compact discs sold by the Plaintiff and made from master recordings belonging to the Plaintiff.

235.   As such, the Plaintiff's right to relief, as stated in the paragraphs below, ultimately arises out of the same series of transactions and occurrences.

236.   This action raises substantial questions of law and fact common to all of the defendants hereto.

## FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT

237.   Plaintiff SLEP-TONE realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein, and incorporates them herein by reference.

238.   Each of the Defendants used, or authorized or directly benefited from the use of, a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

239.   The Defendants' use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

240.   Plaintiff SLEP-TONE did not license any of the Defendants to manufacture or acquire reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the provision of their services.

241.   The Defendants' use of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive the Defendants' customers and patrons into believing that the Defendants' services are being provided with the authorization of the Plaintiff and that the Defendants music libraries contain bona fide Sound Choice accompaniment tracks.

242.   The acts of each of the Defendants were willful.

243.   Unless enjoined by the Court, the Defendants' infringing activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

///

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)

244.   Plaintiff SLEP-TONE realleges each and every allegation set forth in paragraphs 1-236 and 238-243, as though fully set forth herein, and incorporates them herein by reference.

245.   On each occasion when they caused a SLEP-TONE accompaniment track to be played during a karaoke show, the Defendants displayed the Sound Choice Marks in connection with the Defendants' karaoke services.

246.   The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that SLEP-TONE sponsored or approved the Defendants' services and commercial activities.

247.   The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by SLEP-TONE and purchased by the Defendants.

248.   The Defendants' use of the Sound Choice Marks in this fashion would have inured to the benefit of the Plaintiff if the Defendants had legitimately acquired genuine Sound Choice disks instead of counterfeiting them or acquiring counterfeit copies, in that the Plaintiff would have received revenue from such sales.

249.   Because SLEP-TONE has been denied this revenue, it has been damaged by the Defendants' uses.

250.   Unless enjoined by the Court, the Defendants' unfair competition activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SLEP-TONE demands trial by jury and prays for judgment against each of the Defendants severally and that the Court:

- 36 -

A.   Find that each of the Defendants has, directly and/or vicariously through the contractors they hired, committed acts of trademark infringement, including, but not limited to, counterfeiting of the federally registered Sound Choice Marks;

B.   Find that each of the Defendants has engaged in unfair competition against Plaintiff SLEP-TONE in violation of 15 U.S.C. § 1125(a);

C.   Find that each of the Defendants has committed deceptive and unfair trade practices under Nevada law;

D.   Enter judgment against each of the Defendants and in favor of SLEP-TONE;

E.   Find the that Defendants' activities were in all respects conducted willfully and for profit;

F.   Award to SLEP-TONE the Defendants' profits and the damages sustained by SLEP-TONE because of the Defendants' conduct in infringing the Sound Choice Marks, or, in the alternative, statutory damages per trademark infringed by counterfeiting in an amount of $2,000,000 per trademark infringed, per Defendant;

G.   Award to SLEP-TONE the Defendants' profits and the damages sustained by SLEP-TONE because of the Defendants' acts of unfair competition under 15 U.S.C. § 1125(a), plus reasonable attorneys' fees and costs of suit;

H.   Award to SLEP-TONE treble, punitive, or otherwise enhanced damages, as available, for the Defendants' acts of willful infringement;

I.   Order the seizure of all computer disks, drives, or other media belonging to any of the Defendants, which media contain illegal counterfeits of registered trademarks;

J.   Grant SLEP-TONE preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks by the Defendants;

/ / /

/ / /

/ / /

K.   Award SLEP-TONE its costs of suit and attorney's fees, to the extent not awarded above; and

L.   Grant SLEP-TONE such other and further relief as justice may require.

Dated: February 10, 2012                BORIS & ASSOCIATES


                                        By:  _____/s/_____

                                        Donna Boris Cal. State Bar # 153033
                                        donna@borislaw.com
                                        Attorneys for Plaintiff


Dated: February 10, 2012                LAW OFFICES OF KERRY FAUGHNAN


                                        By:  _____/s/_____

                                        Kerry Faughnan Nevada State Bar # 12204
                                        kerry.faughnan@gmail.com
                                        Attorneys for Plaintiff